Mr. Chief Justice Sharkey
delivered the opinion of the Court.
This was an action of detinue instituted by Talbot, in May, 1840, to recover of Hunter two slaves. In February, 1839, Hunter sold the slaves in question to John G. Chalmers, giving no other title than a receipt in writing, by which he acknowledged that he had received the sum of five thousand dollars in payment. In August, 1839, Chalmers conveyed a large quantity of property to Talbot intrust, including the two negroes.. These contracts all took place in Tennessee. Hunter never delivered possession, but removed with the slaves to Mississippi, and still held possession at the time the suit was brought. The negr.oes were demanded by Chalmers through an agent, on two occasions. Hunter refused to deliver them, giving as a reason, on the first demand, that he had some work which he-wished them first to finish, but did not deny Chal-mers’s right. The witness afterwards saw Hunter, who said that he understood Chalmers had failed, and would not be able to pay his liabilities. About the time the property of Chalmers was to be sold under the deed of trust, Hunter endeavored to negotiate for the purchase of the negroes, but'failed. It appears that there were many business transactions between Hunter and Chalmers, and it *761 was proven with all reasonable certainty, that in payment for the slaves, Chalmers undertook to pay certain bills of exchange which he had accepted, and which had been drawn on him by Hunter. And it was also in proof, that the bills still remain unpaid, and that the holders look to Hunter for payment. A witness stated that at the time of this contract Chalmers must have known that he would not be able to pay the amount, being then in a failing condition, but that his condition was not then generally known. Chalmers himself stated to a witness, that Hunter’s pretext for failing to deliver, was that he had failed to pay the bills. On this state of facts the jury found a verdict for the plaintiff below, and the defendant moved for a new trial, which the Court refused to grant him ; in which we think the Court erred.
The sale made by Hunter, although he acknowledged the receipt of so much money, was no doubt a sale upon a credit. The receipt is not so conclusive in its chara'cter 'as to preclude testimony to explain the transaction. If Hunter had received the money, there would be an end of the question, but the consideration was the amount which Chalmers agreed to pay. As a general rule, when personal property is sold on a credit, the vendee acquires the right of property and the right of possession, unless there be some stipulation to the contrary. But in justice to the vendor, the law qualifies the general rule. If before delivery the vendee become insolvent, the vendor may protect himself by refusing to deliver, if payment has not been made when the credit expires. 2 Kent’s Com. 493, 494, and authorities cited, 5th ed. The case of Bloxam v. Sanders, 4 Barn. & Cress. 941, was decided on this, principle. A quantity of hops had been sold and nothing said as to the time of payment, but on such contracts there was a customary credit. The hops were not delivered, but remained for some time in the store-house of the vendor, and in the meantime the vendee became a bankrupt. On trover by his assignees, it was held, that they could not recover ; that the right of possession was defeated by the intervening bankruptcy of the vendee. Regarding this as a sale upon a credit, it seems to differ in no essential particular from the case of New v. Swain, cited by Chancellor Kent. The only point on which a doubt could rest, is as to the time at *762 wbich Chalmers became insolvent, and whether the plaintiff in error contracted in ignorance of such insolvency ; and this we think is sufficiently explained by a careful review of'the evidence. Hunter sold on the 26th of February, 1839, and it is in proof that Chal-mers'was then much embarrassed, and must have known that he could not pay ; and it is also in proof,' that his embarrassed condition- was not generally known. The presumption is that Hunter knew nothing of it, and this presumption-is strengthened by the conversation which occurred between Hunter and the agent who demanded the negroes ; which conversation was after March, 1839, that being the month in which the demand was first made. In Aur gust following, Chalmers conveyed his property in trust for the benefit of his creditors. These circumstances lead almost irresistibly to- the conclusion that Hunter contracted in ignorance of Chalmers’s failing condition, but that he was informed of it sometime afterward, and on that ground refused to deliver. His condition does not differ from that of a vendor, whose® vendee had become insolvent after sale and before delivery. But the transaction is also accompanied by the aggravating circumstance that Chalmers, knowing his inability to pay, contracted in bad faith.
But it is insisted that Chalmers is still liable, and that he has deposited notes as collateral security, which we are to presume will be paid. He was liable before he purchased, so that his mere liability was not the consideration. The agreement was to pay ; not to deposit collateral security. The bills have not been paid, and Chalmers is insolvent ; nor has anything been realized from the collateral security ; so that this position does not alter the case. The judgment must be reversed, and a new trial granted.
Judge Clayton gave no opinion, having been of counsel.